(78 South. 738)

No. 22703.

ILLINOIS CENT. R. CO. v. NEW ORLEANS TERMINAL CO.

In re NEW ORLEANS TERMINAL CO.

(April 29, 1918. Rehearing Denied May 27, 1918.)

*(Syllabus by Editorial Staff.)*

1. RAILROADS ⬡=138—OPERATION—CONTRACT FOR MOVEMENT OF TRAINS.

A contract between a railroad company and a terminal company, whereby the terminal company undertook to provide for the movement of trains, obligated the terminal company to provide for their safe movement.

2. RAILROADS ⬡=138 — OPERATION — MOVEMENT OF TRAINS—RESPONSIBILITY.

A terminal company, which, by contract with a railroad company, reserved exclusively to itself the function to provide for the safe movement of trains, assumed exclusive responsibility for nondischarge of such function.

3. PLEADING ⬡=228—EXCEPTION—DETERMINATION FROM ALLEGATIONS.

The exception to the petition of no cause of action must be determined from the facts as alleged.

4. PLEADING ⬡=34(4) — EXCEPTION — CONSTRUCTION AGAINST PLEADER.

As against an exception of no cause of action, the petition must be construed most strongly against the pleader.

5. PLEADING ⬡=34(5) — EFFECT OF ALLEGATIONS.

In a railroad's action against a terminal company for damages sustained through head-on collision of two trains, the petition's allegation that the collision was due entirely to the action of defendant's employés was equivalent to an allegation that it was not by the orders of the train dispatcher, a joint employé of the parties, that the guilty train was on the wrong track.

6. LIMITATION OF ACTIONS ⬡=21(1) — PRESCRIPTION—BREACH OF CONTRACT—COMMISSION OF TORT.

Where a terminal company, obligated by its contract with a railroad company to provide for the safe movement of trains, through its employés ran a train into a train of the railroad company, it was liable for breach of contract, though its act constituted a tort, for a contractor cannot destroy the obligation of his contract by committing a tort, and limitations of one year, relating to tort, was not applicable where action was grounded on contract.

7. DAMAGES ⬡=20, 23—CONTRACT AND TORT.

For breach of contract without fault or bad faith, only those damages in the contemplation of the parties when making the contract may be recovered, but for a tort all damages resulting directly from the act or negligence may be recovered.

8. RAILROADS ⬡=137—CONTRACT—CONSTRUCTION—ABSORPTION OF BREACH IN TORT.

The provision of a contract between a railroad company and a terminal company, obligating the terminal company to make good any losses occasioned entirely through the fault of its own employés, offended neither prohibitory law nor good morals, and would prevent absorption of a breach of the contract in a tort.

Leche, J., dissenting.

Certiorari to Court of Appeal, Parish of Orleans.

Suit by the Illinois Central Railroad Company against the New Orleans Terminal Company. From a judgment of dismissal, plaintiff appealed to the Court of Appeal, which reversed the judgment and remanded the case with leave to plaintiff to amend, and defendant applies for certiorari or writ of review. Judgment of the Court of Appeal affirmed, in so far as it sets aside the judgment of the trial court, and overrules exceptions of no cause of action and prescription of one year, and set aside in so far as

it requires the petition to be amended and case remanded to the district court.

Hall, Monroe & Lemann, of New Orleans, for relator. Hunter C. Leake and Lemle & Lemle, all of New Orleans (Blewett Lee and R. V. Fletcher, both of Chicago, Ill., of counsel), for respondent.

PROVOSTY, J. The plaintiff railroad company entered into a contract with the defendant railroad company for the use of the latter's terminal tracks. A head-on collision occurred between one of the freight trains of the plaintiff company and a train of the defendant company running in opposite directions on the same track; and plaintiff sues in damages. Only the following clauses of the said contract need to be considered:

That the defendant company "shall have control of operations on said railroad and tracks, and shall provide for the movement of the cars and engines of the other parties hereto over said railroad and tracks, and to those ends shall furnish the services of all such train dispatchers, operators, signalmen, yardmen, trackmen, laborers, or other persons whose services may be necessary in the premises."

That "the crews and employés" of the several parties to the contract, "while operating trains and engines upon said railroad and tracks shall at all times be subject to the orders and directions of the superintendent and other proper officers of the terminal company."

"12. That all superintendents, foremen, train dispatchers, operators, signalmen, switchmen, yardmen, or other employés of the Terminal Company, employed in or about the operation, maintenance or care of the properties jointly used hereunder, shall, for the purposes of this agreement, be considered as the sole employés of that one of the parties hereto for which they may at any time perform a service, or services, the benefit or other result of which shall accrue to such party solely, and as joint employés of any two or more of the parties hereto while performing a service, or services, the benefit or other result of which shall accrue to such two or more parties hereto.

"13. That the responsibility of the parties hereto, as between themselves, for the defense or payment of any and all claims, demands, suits, judgments or sums of money to any party accruing for loss, injury, death or damage, however resulting, either to person or estate, and arising by reason of or in connection with the joint use by the parties hereto of the said

facilities to be jointly used hereunder, as aforesaid, or which may be attributable to the acts, negligence or default of any person or persons employed by the parties hereto, or any of them, in or about the operation or maintenance or care of said facilities, shall be distributed as follows:

"(a) When the proximate cause of any such damage shall be the negligence of any one who may at the time be employed in the sole service and for the sole benefit of any party using these facilities, or defects in the equipment in its possession, without contribution to such negligence by any employé of any other party hereto, then that one of the parties hereto whose employé, as so defined, shall be at fault, or who shall have had in its possession equipment the defects in which shall have caused the damage as above, shall be responsible for such loss or damage.

"(b) When the proximate cause of any such damage shall be negligence to which employés of two or more of the parties hereto shall have contributed, or the negligence of a joint employé, acting simultaneously for two or more parties, then each of the parties whose employés have been at fault, or in whose service such joint employé may have been acting at the time, shall be so responsible for and shall bear all loss incident to any injury to or damage of its own property, including foreign equipment in use by it."

[1] Contractual liability on the part of defendant results from two clauses of this contract: First, from the clause by which the defendant undertakes to provide for the movement of the trains, which, of course, can only mean the safe movement; and, secondly, from the clause which obligates that one of the parties for whose benefit services are being rendered to make good the losses occasioned by the fault of the employés rendering the services.

[2] Defendant excluded the plaintiff company from all participation in the "control of operations on said railroad and tracks," and took that function exclusively upon itself, and obligated itself to discharge it, or, in the words of the contract, to "provide for the movement of the cars and engines of the parties hereto over said railroad and tracks, and to that end to furnish the services of all" such employés "as may be necessary in the premises." To "provide for the movement" of the trains, necessarily means to provide

for their safe movement; and, necessarily, by reserving that function exclusively to itself defendant, assumed exclusive responsibility for its nondischarge. It stands to reason that plaintiff, being excluded from all participation in that function, could not be responsible in any degree for its nondischarge, or for any loss resulting therefrom. Indeed, the fact that this responsibility would have necessarily to rest upon some one, and would, as an effect of said exclusive assumption, rest wholly upon defendant in the absence of contrary express agreement, was fully realized by the parties, and evidently was what led to the insertion of the said clauses 12 and 13, according to which that responsibility is regulated by providing that the employés are to be considered to be the joint employés of the two parties when the services that are being rendered by them are for joint interest, and the separate employés of that one of the parties for whose separate benefit the services are being rendered, and that the responsibility for the faults of these employés while engaged in said services is to be governed accordingly. The services of the employés by whose fault the collision occurred were being rendered solely for the benefit of the defendant company; and thus defendant, instead of providing for the safe movement of the train of plaintiff, rammed it with another train.

Defendant contends that the collision resulted from the fault of the train dispatcher, and that this official was the joint employé of the two companies; and that therefore the plaintiff's petition shows no cause of action, in view of the express terms of clause 13(b).

[3-5] This exception of no cause of action has, of course, to be determined from the facts as alleged in the petition; and we do not think that from the facts as alleged the conclusion can be legitimately drawn that the train dispatcher was the joint agent of the parties. While the petition is not as explicit on that point as it might have been made, it is sufficiently so, we think, even when construed most strongly against the pleader, as must be done. It alleges that the tracks in question are two in number: one exclusively for traffic southbound; and the other exclusively for traffic northbound; that plaintiff's train was properly on the track it was on, and by orders of the train dispatcher, whereas the other train was improperly on the same track; and that "the said collision was due entirely to the action of the said defendant's employés." Now, if the guilty train had been on this wrong track by the orders of the train dispatcher, and this official had been the joint employé of the parties, the collision could not have been due "entirely to the action of the defendant's employés," but would have been due to the action of the joint employé of the parties. Therefore the said allegation that the collision was due entirely to the action of defendant's employés is equivalent to an allegation that it was not by the orders of the train dispatcher that the guilty train was on this wrong track.

We are assuming here that the defendant is well founded in the contention that the train dispatcher would have been the joint agent of the parties if it had been by his orders that the guilty train was on the wrong track. Whether he would have been such is a question that can come up only after the fact of the guilty train having been there by his orders shall have been established, and that fact, we find, does not appear by the petition; but, on the contrary, is negatived by the petition taken as a whole. Our said assumption, therefore, is thus made merely for argument, and not by way of expressing an opinion on said question.

[6, 7] Another contention of defendant is that if plaintiff has a cause of action, it is

in tort, and that the action is prescribed, more than one year having elapsed between the date of the collision and that of the filing of the suit. There is no doubt that the action of the defendant, through its said employés in running this other train into that of the plaintiff, amounted to a tort; but there is no reason why the breach of a contract by means of a tort should not furnish ground for an action for breach of contract. A contractor cannot liberate himself from his contract, or, in other words, destroy its obligation, by committing a tort; and if the obligation is not destroyed, but remains in full force, and the contract is breached, there is evidently a ground of action on the contract. Because a certain act of omission or commission violates the general duty which a person owes to society not to injure another is no reason why it should not, at the same time, violate a special duty owing to this other by virtue of a contract to do or not to do that particular thing, and why the violation of the latter duty should not furnish a cause of action. The measure of damages may be different for the injury caused by an act according as the act is viewed as a breach of contract or as a tort; and, clearly, the party injured should be entitled to the one or the other action accordingly as his interest may dictate. For breach of contract without fraud or bad faith only those damages which entered into the contemplation of the parties at the time of making the contract may be recovered. Whereas for tort all and whatever damages resulting directly from the act or negligence complained of may be recovered.

The illustration given in the brief of the learned counsel for defendant of a man who, having a house with a hall in the middle, leases one side, with privilege of using the hall, and thereafter assaults his lessee in this hall, has no analogy; for this lessor never undertook by his contract not to as-sault the lessee in his hall or to protect the lessee against the attempt by any one else to do it. But if, instead of assaulting the lessee, he caused him to fall and be injured by wrecking the floor of the hall, or otherwise making the hall unsafe for use, there would be an analogy; for the maintenance of the hall in a safe condition for use would have been part of his contract. In the latter case, however, he would be liable both for breach of contract and tort.

The decisions cited by the learned counsel contain nothing opposed to the ideas which we have hereinabove expressed.

What the court held in Schoppel v. Daly, 112 La. 201, 36 South. 322, was simply that "the existence of contractual relations between two parties is no bar to a right of action for tort committed pending the contract, and connected with it, though the contract may more or less affect the rights * * * of the parties." This, it seems to us, accords perfectly with what we have said hereinabove. The intention of the court certainly was not to express the idea that the breach of a contract by means of a tort may not furnish ground for both an action on contract and an action in tort, for the court cites in support of that statement Ballew v. Andrus's Executor, 10 La. 216, where the court said:

"Conventional obligations may be superadded to those which result from torts, * * *. and a party in whose favor they accrue may choose between them and resort to either remedy."

In Dave v. M. L. & T. R. R. Co., 46 La. Ann. 273, 14 South. 911, the action was clearly in tort; and all that the court did was to hold that it was of that character. The court did not hold that the same act of defendant would not have furnished ground for an action on contract. The case was that of a passenger negligently carried beyond his station, and then without excuse roughly ejected from the train. No one, we hope,

would say that a passenger, negligently carried beyond his station and then unceremoniously ejected, has not a right of action on contract.

And the same may be said of King v. N. O. Ry. & L. Co., 140 La. 843, 74 South. 168, as to the character of the action. The act complained of was the intempestive or premature starting of a street car from which the plaintiff was in the act of stepping off. Here, again, the court did not hold that plaintiff could not have sued on contract, but merely that, as a matter of fact, plaintiff was suing in tort.

[7] And what we have here said of King v. R. R. Co. applies equally to McGinn v. Railroad Co., 118 La. 811, 43 South. 40, 8 L. R. A. (N. S.) 1120, 10 Ann. Cas. 633. All these cases are founded upon common law, and there cannot be any disputing that: for the breach of the contract of carriage by means of a tort, the passenger may at common law bring either action, at his choice.

"In an action by a passenger against a carrier, the usual rule applies that when a duty is imposed by law by reason of the relation of the parties, although such relation was created by contract, a neglect to perform the duty gives the party a right of action, and he may elect to sue upon the contract or bring an action ex delicto; and it is well settled that a passenger, injured through the negligence or carelessness of the carrier, may proceed either upon the contract or proceed in tort." 5 Ruling Case Law, p. 63, par. 702.

The following excerpt from Fuzier-Herman, Repertoire du Droit Français, Vo. Responsabilité, No. 4, expounds the legal situation very clearly:

"Certain authors do not admit any distinction between contractual and tortious liability. According to them there is no duality but unity in the fault. The difference pretended to be established between the two kinds of fault, lacks all foundation; it is but a kind of illusion resulting from a mere superficial examination, the one and the other fault creates equally an obligation, that of repairing the damage that has been done; the one and the other presuppose equally the existence of a prior obligation; the one and the other consist equally in a fact which constitutes a violation of this obligation. Only in what is commonly called a tort the violated obligation is one arising by operation of law, having for its object a negative fact, an abstention. If the idea is to speak of a distinction to be made in practice between contractual and legal obligations, perhaps some dispositions of positive law may be found which will impart an interest to that distinction; but if the idea is to establish a specific distinction between faults from a point of view purely rational and doctrinal, the commonly accepted distinction is not contestable merely; it is without sense or reason."

[8] But even if, as a general proposition, the tort absorbs the breach of contract, so that the latter no longer exists as a ground of action, this absorption could not be allowed to take place in the present case; for by the express terms of the contract of the parties—clause 13 (a)—it has been provided otherwise; and, as this provision offends against neither a prohibitory law nor good morals, there could be no reason for not enforcing it as agreed to. Defendant by this clause expressly obligates itself to make good any losses that may be occasioned entirely through the fault of its own employés.

Cases strongly illustrative of a contractual obligation not merging in, or being absorbed by, a concurrent obligation in tort are those of Semple v. Buhler, 6 Mart. (N. S.) 665, and State v. Winfree, 12 La. Ann. 643, where the same act is held to give ground to an action in tort against a sheriff and in contract against his bondsmen; and Levasseur v. Gardner, 34 La. Ann. 264, where for the tort committed by an attachment a suit on the attachment bond is held to be on contract.

Our Brethren of the Court of Appeal were of the opinion that the petition showed a cause of action, and that the suit was on contract, but thought the petition ought to be amended so as to make clear, or explicit, the allegation that it was not by the orders of the train dispatcher that the culprit train was where it was; and they remanded the case for said amendment to be made. Our view, as already stated, is that, while the petition might have been made more explicit

in that regard, its allegations, taken as a whole, are sufficient.

The judgment of the Court of Appeal is therefore affirmed in so far as it sets aside the judgment of the district court and overrules the exceptions of no cause of action and prescription of one year; and it is set aside in so far as it requires the petition to be amended, and the case is remanded to the district court to be proceeded with according to law; the defendant company to pay the costs of this court and of the appeal.

MONROE, C. J., takes no part. LECHE, J., dissents.