## WARREN v. METROPOLITAN LIFE INS. CO.

### No. 5853.

Court of Appeal of Louisiana. Second Circuit.

June 28, 1939.

Rehearing Denied July 17, 1939.

Isaac Abramson, of Shreveport, for appellant.

E. W. & P. N. Browne, of Shreveport, for appellee.

DREW, Judge.

This is a suit to recover damages for personal injuries alleged by plaintiff to have been received by her when she fell through the back porch of a dwelling house rented from defendant by her employer. She alleged that her injuries were caused by the defective flooring of the porch; that it was deteriorated and rotten and gave way when her weight was placed on it; that said defect was a vice in the construction of the floor of the porch, and caused by the use of defective lumber and, if not caused in this manner, was the result of the failure of defendant to keep the floor of the porch in good repair. She prayed for damages for loss of earnings,

pain and suffering, permanent injuries and doctor's bills, totalling $6,175.

Defendant denied all material allegations of plaintiff's petition, and further alleged that prior to the date of the alleged accident it had sold the premises of which plaintiff complains to A. C. Smith under a contract of sale entered into on April 15, 1936, under which contract the vendee had taken possession; therefore it is not liable to plaintiff for any injuries she might have received.

The lower court awarded judgment for plaintiff in the sum of $295, with legal interest from judicial demand, and ordered defendant to pay expert witnesses used by plaintiff the sum of $25 each, or a total of $75, and to pay all other costs.

Plaintiff appealed from the judgment which rejected her demand in excess of $295. The defendant did not appeal, but filed an answer to the appeal reurging the contention made in the answer, that it was not the owner of the property and therefore not the landlord or lessor of the premises occupied by plaintiff's employer at the time of the accident.

■ The record discloses without contradiction that the floor of the back porch on the house gave way, causing plaintiff's leg to go through it up to her knee, and that she was severely injured. The flooring had the appearance of being sound. Plaintiff weighed more than 200 pounds, and when she stepped on one of the boards which was weak it gave way. Plaintiff was lawfully on the premises as a servant of Mrs. Hoover, a lessee of A. C. Smith, who had possession of the house as owner or lessee, a matter we will discuss later. Under the law and jurisprudence of this state plaintiff is entitled to recover from the owner who authorized the use of the building. Allain v. Frigola, 140 La. 982, 74 So. 404; Price v. Florsheim, 13 La.App. 298, 127 So. 22.

The principal defense urged by defendant is that at the time of the accident it was not the owner of the property and therefore was not the lessor of plaintiff's employer; that on April 15, 1936, it had sold to A. C. Smith the property and he had taken full possession of it. A photostatic copy of the contract, which was never filed or recorded, is in the record. The contract clearly gave to A. C. Smith the right to either buy or lease the property in question, and he accepted the latter proposition. In said contract defendant agreed to sell to Smith the property in question for a consideration of $4,000, to be paid $400 on signing the contract and $29 on the first of each month thereafter. From the $29 there was to be first taken interest, at the rate of six per cent per annum, on the balance of the unpaid purchase price, and the remainder applied on the purchase price. It further provided that in consideration of the terms and conditions contained in the contract, and also in consideration of the granting of possession of the premises as herein set forth, the purchaser agreed to make additional monthly payments of one-twelfth of the estimated annual taxes. It further provided that when Smith has paid on the purchase price the sum of $1,200, he shall be entitled to a conveyance of the property upon executing a mortgage against it for the balance due and notes of $140 each, payable every six months until the balance of the purchase price is paid.

After binding Smith to many other obligations affecting the property, these clauses follow:

"Seventh: Whereas, the Purchaser may desire to enter into possession of the premises herein described prior to the time when the Purchaser is entitled to a conveyance under this contract, and the parties have agreed that such entry into possession, if made, shall not be as vendee in possession, but as tenant of the Seller.

"Now, therefore, it is covenanted and agreed that should the Purchaser enter into possession of the premises prior to receiving a conveyance of the premises, such possession shall be that of tenant from month to month, and in case of such entry into possession the Seller leases to the Purchaser and the Purchaser hires and takes from the Seller the premises herein described as tenant from month to month from the date of entry into possession until the Purchaser accepts a conveyance of the premises and fully performs this contract, or until such earlier time as the Seller shall by reentry or by written notice to the Purchaser, deposited in the United States mails, addressed to the Purchaser at said premises, terminate such tenancy. If such tenancy is created the monthly rent for the premises payable by the Purchaser shall be the same amount as is provided herein to be paid monthly, plus taxes, assessments, insurance premiums, and all other sums provided to be paid by the Purchaser, and the Purchaser agrees to

make payment of such rent at the time and in the amount as herein provided.

"The Purchaser covenants and agrees that he will not underlet or sublet the whole or any part of the premises without the written consent of the Seller.

"If default is made in the payment herein provided for, such default shall be deemed a default in the payment of rent, and the Purchaser agrees, on demand of the Seller, to surrender the premises to the Seller, together with all improvements made thereon, and the said Purchaser further agrees in case of default that the Seller may reenter the premises and remove any and all persons and property therefrom either by summary dispossess proceedings, force, or otherwise, without being liable to prosecution or damages therefor.

"Eighth: In case the Purchaser shall fail to perform this contract, or any part thereof the Seller immediately after such default shall have the right to declare the same void and retain whatever moneys may have been paid hereon and all improvements that may have been made upon the premises, and the Purchaser shall have no right or claim thereto for any cause whatsoever, and in case the Purchaser may have entered into possession the Seller may consider and treat the Purchaser as its tenant, holding over without permission, and may take immediate possession of the premises and have each and every other occupant removed and put out or the Seller shall have the right to exercise any other lawful means or remedies for recovering possession of said premises, and all moneys paid by the Purchaser shall be considered rent for his use and occupation of said premises, and as liquidated damages for failure to perform the contract."

As before stated, this contract was never filed for recordation. The record is barren of any testimony to show that Smith ever complied with any of the terms or conditions of the contract, not even as to the payment of the original $400. He was clearly not the owner of the property. He possessed it with the full knowledge and consent of the defendant and sublet it to plaintiff's employer with the implied consent, at least, of the defendant.

Defendant was the lawful owner of the property and responsible for its condition. It was defendant's duty to keep it in a proper state of repair, and by failing to do so it is liable to plaintiff, who was lawfully thereon, for the damage suffered by her when a defective board in the floor of the porch broke from her weight, causing her leg to protrude through the floor.

Plaintiff contends that the amount of the award is inadequate. For that reason she appealed from the judgment of the lower court.

Plaintiff is a colored woman 33 years of age and had been, prior to the accident, engaged as a domestic servant, earning $5 a week. She received the injury, for which she has sued for damages, on April 17, 1937. Judgment was rendered below on July 15, 1938, or practically 64 weeks after the date of injury, during which period of time she has done no work due to her injuries.

She incurred $45 medical expenses for treatment. The first X-ray taken disclosed a fracture, and a cast was applied to her leg. This cast remained on the leg for approximately a week, when the second X-ray was made and her doctor decided there was no fracture. The cast was removed in part at that time, leaving a half cast on the back and front of the leg. This was not removed until approximately eight weeks later. She was forced to stay in bed most of the time during this period. She used crutches until the last part of September, approximately five months after the accident. A scar has been left on the leg and she complains of pain and swelling in her leg when she stands on it for any length of time. The record discloses that plaintiff suffered considerable pain and is continuing to suffer to some extent when using her leg.

The medical testimony shows that at the time of trial there was an enlargement of the anterior surface of the right leg, the one injured. The enlargement is about four or five inches below the knee and there is a scar about midway between the ankle and the knee on the anterior surface, which shows evidence that there has been abrasion and laceration of the soft tissues. The enlargement is evidence of some trauma to that part of the leg. It is either the result of a fracture or a combination pathology of osteomyelitis or periostitis. The pathology found is of traumatic origin.

We are convinced the award made by the lower court is inadequate. Plaintiff has actually lost $320 in wages because of inability to work. She is en-

titled to recover that amount. She is also entitled to recover the $45 medical bill incurred, and is entitled to $350 for pain and suffering, or a total of $715.

It therefore follows that the judgment of the lower court will have to be amended by increasing the amount awarded to plaintiff from $295 to $715, and it is so ordered, adjudged and decreed; and in all other respects the judgment of the lower court is affirmed with costs.